## Hoffman, Appellant., v. Burr et al.

*Sale by sample—Warranty—Damages.*

In an action to recover the price of cotton pickings alleged to have been sold by sample, where the evidence is conflicting as to whether the goods delivered were equal in quality to the sample, it is proper for the court to charge that, if the goods were not equal to the sample, plaintiff was not entitled to recover.

In such a case it is proper to refuse to charge that if plaintiffs delivered pickings which were not equal to the sample, the difference in quality goes simply to the reduction of damages.

Argued March 29, 1893. Appeal, No. 177, Jan T., 1893, by plaintiff, George E. Hoffman, from judgment of C. P. No. 2, Phila. Co., March T., 1891, No. 1089, on verdict for defendants, Burr Bros. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ.

Assumpsit for goods sold and delivered.

The facts appear by the charge of the court, by HARE, P. J.:

" According to the statement of the defendant, Mr. Burr, who seems to be one of the persons quite largely engaged in dealing in cotton in this city, he received a sample of what is termed pickings. As I understand, it was lying on the floor of his warehouse or in his countinghouse and was of rather a superior quality. Mr. Jennings, who acted as agent or broker for the plaintiff, came in and noticed this, and some little conversation occurred. Mr. Jennings asked the price. It was mentioned to him and he said that he could sell as good as that at a less price. To that challenge the defendant, Mr. Burr, replied, if that was the case he would buy. Mr. Jennings produced his sample and exhibited it as the cotton obtained from certain bales lying on the wharf which he was prepared to sell, and the price named and the quality. Mr. Burr replied that if it equalled the sample he would buy at Mr. Jennings's price. This was on the 24th of March. The next day the defendants received the invoice or order for the cotton, sent to the wharf for it and had it delivered at their warehouse, whether on the 25th or 26th is not very clear in my mind, but the jury will say. When the pickings arrived they were tagged so specifically as to identify them. Then the defendant, Mr. Burr, and two of his employees, one I presume the bookkeeper, examined it and proceeded to sample it by taking out handfuls from the wrappings in which it was inclosed, and were very much disappointed to find that it was decidedly inferior to the sample shown. [These pickings are what are gathered together in the warehouses or elsewhere from the cotton when prepared for the market, and naturally contain more or less of other things, but there may be degrees in all things, and, of course, it may be so far adulterated or mixed with other substances as to be much deteriorated in value; it may be such as to be of little or no value.] [1]

" The defendants came to the conclusion, which they have sustained by the testimony given in court, if the jury credit what they say, that the quantity of these things was greater in bulk in the goods delivered than it was in the sample. Besides, and in addition to that, the defendant speaks of the " tender cotton," some of which was in the sample and more of which they say was in the bulk. [There was what they called punk,

which it seems is cotton which has been exposed to the elements
so that it not only becomes tender, but the strength of the fiber
is impaired and it is virtually resolved into pulp, and then in
the course of time into a ball.   Besides that tender cotton there
was a great deal of punk.   The other things in the presence of
this render the sample much inferior to the bulk and in effect
apparently of little value.] [2]

" On the other side, I do not know that there is any testi-
mony to the contrary to this, except that of Mr. Jennings.   Mr.
Jennings did not sample the cotton on the wharf, but it was
sampled by somebody else, who was not produced, but I see no
reason to question the good faith of either side in this case, and
I have no doubt he would have been produced if he could have
been found.   [Mr. Jennings merely had a sample which may
have answered more or less perfectly to the bulk, because obvi-
ously with the best intentions in the world and the best object in
the world, it is not always easy to know what is in the rag-tag
and bobtail of a bale made up as these bales are made up.] [3]

" Mr. Jennings states that, relying on the good faith of the
persons who took the sample from the bulk, he accepted it.
If the defendants are right, and they are not contradicted on
that point by Mr. Jennings, they entered into this contract with
the understanding that the goods were to be equal to the sam-
ple, and they were bound to take them and pay for them if they
were equal.   The vendor says, I offer you something equal to
this sample I have in hand, and on the other hand the buyer
promises to pay for and become the owner of it, if it be of such
a quality.

" [If that was the contract, the question for the jury is sim-
ply, Was the bulk equal to the sample? because if it was not,
the 'if' comes in which sometimes raises a great many ques-
tions. If it was to be bought by them and become their property,
if there was a state of things which the result disproved, there
would be no obligation on their part to keep the cotton and pay
as much as it was worth, but there would be a right on their
part, if it did not correspond with the sample, to say they would
not have it, and it must be taken away by the vendor.] [4]

" Such a practice naturally grows up in commercial commu-
nities as business increases, and goods are sold under circum-
stances which render it difficult to know precisely what they

are, and the vendor can more easily ascertain their quality than the purchaser. The vendor takes a sample and carries it round as a guide to purchasers. If that is all, the sample is not made a part of the contract; it does not necessarily bind the vendor, who may be entitled to recover, if he acted in good faith, though the goods are not like the sample. But if the purchaser says, I will not buy unless there is a correspondence, and the vendor agrees to sell on those terms, then the correspondence of the two articles becomes a part of the obligation, and the contract should be fulfilled. Of course, there are many cases in large commercial transactions where parties must rely upon each other, and it is not possible for them to ascertain the condition of the goods, except by each entering into an agreement. [It is easier, naturally, for a vendor to sample his own goods than for a purchaser. Therefore, if you find these goods were not according to the sample, and that nothing occurred subsequently to vary the relations of the parties, the case would seem to be with the defendant.] [5]

" [Evidence has been given, or an attempt has been made to establish the existence of a custom, that where goods are landed upon the wharf under such a contract as this it was the duty of the purchaser to examine them on the wharf. It is contended that, as the defendant hauled the goods from the wharf, and did not proceed to ascertain the true state of the case until they were in the warehouse, he took the risk on himself and could not complain of any discrepancy that might exist between the representation by the production of the sample and the real facts of the case. Although this is to a great extent a matter of fact for the jury, I do not know that it will be disputed that the attempt to establish such a custom failed—that the witnesses when brought to the test did not assert that such a custom existed. In order that there should be a custom it is not enough to show that the thing is frequently done, it must appear there is a rule that it should be done, and that if the party does not comply he must take the consequences.] [6]

" You will recollect the first and principal witness called in this matter, when asked what would be the effect of a failure to examine the goods on the wharf, said that the purchaser would be precluded from recovering the expenses of hauling them to his warehouse. That seems not unreasonable, for if

by looking he could ascertain that the cotton was not what it should be, and did not take the precaution, he should be obliged to pay for the trouble and expense of bringing the cotton to his place and should not be entitled to charge that to the vendor. But when asked what was the effect of a failure to examine on the wharf in other respects, he said very frankly " I do not know; " it did not seem to preclude the vendor from examining it at his warehouse afterwards, although it would preclude him from demanding compensation for the cost of hauling to the warehouse.

" We have the testimony of other witnesses produced by the defendant, which is precisely the same. A custom is a rule established by the people of a particular place, or engaged in a certain trade, that certain precautions must be observed or certain things done, and so general that it may fairly be presumed that it is known in the trade, and that if they do not observe the rule they take the consequences—may be as much precluded from asserting rights which they otherwise might have asserted as if the legislature had laid down a rule instead of the inhabitants of the locality. Here the only evidence we have of such a rule was that unless the cotton is examined on the wharf the purchaser pays the expense of hauling to his warehouse. The plaintiff testified with a great deal of frankness that the rule, as he understood it, was the examination must be on the wharf, or within a reasonable time afterwards, whether at the warehouse or elsewhere. If that is the custom it is precisely what the law would say ; that, if a man means to object to that for which he has agreed to pay, he should proceed to make an examination within a reasonable time, and if he allows time to elapse, and as a consequence there is a loss to the other party, he may be precluded from asserting a right which he otherwise would have.

" The cotton was sold on the 24th of March, and hauled to the defendants' warehouse on the 25th or 26th. On the 27th or 28th he had the bales sampled. It was not until the 1st of April that he gave the plaintiff notice that the goods did not answer the sample. If that was an unreasonable delay, and any material rise in the market had occurred in the meantime which would be injurious to the plaintiff or put him in a worse condition, the defendant may have lost his right, which other-

wise would have been enforced. The only damage was the fall in price of cotton pickings. How much or how little I do not know. Of course, if you suppose that the defendant waited for the turn of the market to find out what he might have found out before, and if the fact was that the plaintiff lost the opportunity of selling at the same price or a better price, you may refuse to find for the defendants and find a verdict for the plaintiff. But if there was no such unreasonable delay, it seems to me, upon the testimony as it stands, the verdict should be for plaintiff. That is, if you find the contract was that the cotton should be bought and paid for if it was like the sample.

" [It seems to me that the attempt to establish a custom failed, because the witness when examined said that the effect of the custom upon the relations of the parties would be that the purchaser could not recover the expense of hauling to his warehouse. When asked as to the rest what effect it would have on the other relations of the parties, he said he could not say with accuracy, but he thought the purchaser had a right to examine it at the warehouse, although it must be within a reasonable time.] " [6]

Plaintiff's points, which were refused, were as follows :

" [If the sale of the pickings in question was made by sample, and the pickings were not equal in quality to the sample, then the plaintiffs are entitled to recover a verdict for the difference in value of the pickings shown in the sample and those delivered to defendants.

" If the plaintiffs delivered pickings which were not equal to the sample, the difference in quality goes simply to the reduction of the damages.

" The defendants not having produced any testimony as to the difference in value of the pickings delivered to them by the plaintiff and the sample shown, they are not entitled to any reduction from the amount claimed.

" The damages in this case are the difference between the value of the pickings shown in the sample and those delivered, and any other damages are consequential and remote and such as cannot be taken into consideration in this case.

" The defendants having exercised an act of ownership over the pickings are not entitled to claim any damages by reason

of the pickings not being up to the sample. This act of ownership consisted in offering to make claim against the insurance companies for the value of this cotton."

" The defendants not having examined the cotton at the wharf are not entitled to claim any reduction in the damages by reason of.breach of warranty.

" It was the duty of the defendant to examine the cotton at the wharf before hauling it to his place of business.] " [7]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–7) instructions, quoting them.

*Allen H. Gangewer,* for appellant, cited: Beirne v. Dord, 5 N. Y. 95; Hargous v. Stone, 5 N. Y. 73; Waring v. Mason, 18 Wend. 425; Bradford v. Manly, 13 Mass. 139; note to Boyd v. Wilson, 24 Am. R. 176·; Gardiner v. Gray, 4 Camp. 144; Ogden v. Beatty, 26 W. N. 524; Parkinson v. Lee, 2 East, 314; Benj. on Sales, pp. 128, 650, 935; Kent's Com., par. 503; Rappleye v. Adee, 65 Barb. 589; Dyer v. Libby, 61 Me. 45; Anderson v. Scott, 1 Camp. 235; Hollingsworth v. Napier, 3 Caines' R. 182; Chase v. Willard, 57 Me. 157; Walden v. Murdock, 23 Cal. 540; Straus v. Minzesheimer, 78 Ill. 492; Hatch v. Lincoln, 12 Cush. 31; Kase v. John, 10 Watts, 107; McFarland v. Newman, 9 Watts, 57; Kase v. John, 10 Watts, 107; Thornton v. Wynn, 12 Wheat, 183; West v. Cutting, 19 Vt. 536; Street v. Blay, 2 B. &. Ad. 456; Jordan v. Norton, 4 M. & W. 160; Sedgw. M. of Dam. 319; Story, Cont. 439; Voorhees v. Earl, 2 Hill, 288; Cary v. Gruman, 4 Hill, 625; Gompertz v. Denton, 1 Cr. & M. 207; Parson v. Sexton, 4 C. B. 899; Ollivant v. Bayley, 15 Q. B. 288; Dawson v. Collis, 4 E. L. & Eq. 338; Kennedy v. Mail Co., L. R., 2 Q. B. 580; Pars. Cont. 459, n. 1; Pars. Merc. L., p. 57.

*Thomas Diehl,* for appellees, not heard, cited: Act of April 13 1887; Benj. on Sales, §§ 893–5; Grimoldby v. Wells, L. R. 10 C. P. 391; Lucy v. Mouflet, 29 L. J. Ex. 110.

PER CURIAM, April 17, 1893:

This suit was brought for the price of nine bales of cotton pickings, amounting to $336.88. The defence was that the pickings were sold by sample, and, not being equal to the sam-

ple, the defendants promptly notified plaintiff of the fact and that the goods were subject to·his order, and also that they were uninsured. The plaintiff claiming that they were fully equal to the sample, etc., disregarded the notice and insisted on payment. In the meantime the goods were destroyed by fire. Testimony was introduced by both parties in support of their respective contentions. The case thus hinged on questions of fact that were exclusively for the jury. Those questions were fairly submitted to them by the learned president of the common pleas in a clear and comprehensive charge, in which the law applicable to the testimony was distinctly and accurately stated. The verdict in favor of the defendants, by necessary implication established the facts in their favor; and it was clearly warranted by the evidence. We find no error in either of the excerpts from the learned judge's charge recited in the respective specifications, nor in his answers to plaintiff's points.

Judgment affirmed.